IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ADRIENNE TOWNSEND, ) | |
| ) | |
| Plaintiff, ) | Case No. 06 C 550 |
| v. ) | |
| ) | Judge Virginia M. Kendall |
| THE SWISS COLONY, INC., and SEVENTH ) | |
| AVENUE, INC. ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Adrienne Townsend ("Townsend") brought a Class Action Complaint against The Swiss Colony, Inc. ("Swiss Colony") and Seventh Avenue, Inc. ("Seventh Avenue"), alleging that they violated the Fair Credit Reporting Act ("FCRA") 28 U.S.C. § 1331 and the Truth in Lending Act ("TILA") 15 U.S.C. § 1642. Defendants filed a Motion to Dismiss for failure to state a claim. In response, Townsend filed a First Amended Complaint, and Defendants again moved to dismiss. Townsend then filed a Second Amended Complaint, and Defendants again renewed their Motion to Dismiss. The premise of Townsend's claim is that Defendants violated the FCRA by using her credit information to solicit and advertise to her. Defendants countered that they had offered Townsend a firm offer of credit and as such used her credit report appropriately. In order to properly address the mailing, this Court converted that Motion to Dismiss into a Motion for Summary Judgment and permitted the parties to engage in limited discovery in order to support their respective positions. In so doing, it allowed the parties to file additional materials from their limited discovery. Accordingly, the Court struck the prior motions without prejudice. Townsend

voluntarily dismissed her class allegations. For the reasons stated below, this Court grants Defendants' Motion for Summary Judgment.[1]

## **STATEMENT OF FACTS**[2]

Adrienne Townsend received mailings from each of the defendants, each of which included a catalog of either the Swiss Colony or Seventh Avenue's products and a cover letter offering Townsend credit for buying the products in the respective catalogs through the Defendants "Choose 'n Charge" programs. MTD Ex. B-E; Def. 56.1 at ¶¶ 6, 14. The words: "You are pre-approved" for credit appeared on the cover letters and the front of the catalogs. Def. 56.1 at ¶ 16. Specifically, the mailings indicated that the recipient was pre-approved to receive $400 in credit from the Swiss Colony and Seventh Avenue for use in purchasing products from the catalogs. *Id*. at ¶ 10.

This Court cannot review the exact materials the Defendants sent to Townsend. *Id*. at ¶¶ 6a, 9. Townsend no longer has copies of them. *Id*. at ¶ 6a. As such, Defendants have submitted mailings that they represent are identical to those sent to Townsend, including identical "Choose 'n

---

[1] Throughout this Opinion, the Court will refer to Defendants' Statement of Facts pursuant to Local Rule 56.1 as "Def. 56.1" and Plaintiff's Statement of Additional Facts pursuant to Local Rule 56.1 as "Pl. 56.1."

[2] Plaintiff asserts multiple facts in her Rule 56.1 Statement of Facts, arguing that Defendants admitted the facts because they did not deny them in a responsive pleading. Defendants in this case, however, filed a timely Motion to Dismiss, which this Court converted to a Motion for Summary Judgment. The Motion for Summary Judgment was stricken while the Court allowed for limited discovery. Defendants then renewed it. The Court is now ruling on that Motion. As such, Defendants have not yet been required to file an answer to the Second Amended Complaint and in any case, cannot be deemed to have admitted any allegations in the Second Amended Complaint. Accordingly, all statements of fact relying on this sort of admission are stricken.

In addition, in many of her Statements of Fact, Townsend cites merely to a page number, not indicating the item in the record to which the page number refers. This is not a specific reference to the record as required by Local Rule 56.1, and thus all facts based on this form of citation are stricken. *See* L.R. 56.1(b)(3)(B).

Charge" offers. *Id*. at ¶¶ 6, 7.[3] The actual materials received by Townsend would have differed in that they would have included her name and address. *Id*. at ¶ 8.

Defendants sent Townsend the catalogs and related offers of credit as a result of its consumer prescreening process. Def. 56.1 at ¶ 14. Specifically, in their prescreening process, Swiss Colony and Seventh Avenue "rented" names from third parties and sent them to credit bureaus for prescreening for offers of credit. Pl. 56.1 at ¶¶ 33, 35. After names were rented, duplicate names and customers with previous experience with the Defendant companies were removed. *Id*. at ¶¶ 38-40. Defendants then assigned media codes to the names that indicated the source of the names. *Id*. at ¶ 42. Defendants submitted the names to a credit bureau along with a range of credit scores that they would accept and requested that the credit bureau provide reports only for the names that fell within the accepted range. *Id*. at ¶¶ 43-45. The credit bureau sent back the relevant credit reports. Pl. 56.1 at ¶ 45. Defendants then assigned a credit limit for each consumer that fell within the required range based on the consumer report. *Id*. at ¶ 46.

The amount of credit offered was sufficient to purchase most of the items available in the enclosed catalogs. Def. 56.1 at ¶ 12. However, the terms and conditions listed on the enclosed application for credit indicated that the recipient could be extended a minimum credit line of $50

---

[3] Townsend objects to this Court's reliance on the mailings submitted as Exhibits B-E of Defendants' Motion to Dismiss. Defendants assert that these mailing are the same as those sent to Townsend. *See* Def. 56.1 at ¶¶ 6-7. Of course, the actual items sent to Townsend would be preferable, but it is undisputed that Townsend no longer has possession of those items. *Id*. at ¶¶ 6a, 9. The exhibits will not be excluded because they have been properly authenticated by through the interrogatories and the testimony of Cary McNatt. *See Id*. ¶¶ 6-7. In addition, Townsend does not assert that any terms that would render the mailing anything but a firm offer is missing from the exhibits. Indeed, it is undisputed that all material terms are present in the mailing. *Id*. at ¶ 17. As such, this Court will consider statements of undisputed fact relying on these Exhibits. Regardless, Summary Judgment would necessarily be granted if this Court chose to exclude the exhibits, because if the exhibits were excluded, Townsend would have absolutely no evidence of the offer she received, and the terms of such offer are necessary to prove her case. *See Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 727-28 (7th Cir. 2004).

for the Swiss Colony and $100 for the Seventh Avenue Co., respectively. The offers of credit were not restricted to a one-time purchase or to the purchase of a discreet item; but rather, offered a revolving credit line that could be used for multiple purchases from each of the companies over time. *Id*. at ¶ 13. The language used in the offers stated that the Defendants could "close your account to future purchases or limit their amount." *Id*. at ¶ 13. Each offer included all the material terms: the interest rate, the method for calculating interest, payment terms, annual fee ($0), and minimum finance charges. *Id*. at ¶ 17.

In order for Townsend to take advantage of the offer of credit, she had to call Swiss Colony or Seventh Avenue and complete a telephone application, fill out an application on the internet, mail a completed application, or choose the option to pay for her order with "Choose 'n Charge" credit. *Id*. at ¶ 19. The materials did not include an account number, and Townsend needed to affirmatively request an account to receive an account number that could be used to make purchases. *Id*. at ¶¶ 18, 21-22.

The offer extended to Townsend included an "APP CODE," a multi-functional number printed on catalogs and mailers sent to certain customers. *Id*. at ¶¶ 23-24. The APP CODE was not the same as the account number for a line of credit nor could it be used to make purchases. *Id*. at ¶¶ 29-30. Defendants placed the APP CODES on the mailers containing the offers of credit in order to identify which mailer was sent to a specific consumer. *Id*. at ¶ 25-26. These APP CODES allowed Defendants to identify the consumer, the credit offer extended to that particular consumer and other information sent to that particular consumer including the version of the catalog mailed. Def. 56.1 at ¶ 27. This ensured that Defendants honored the specific offer actually extended to a specific consumer. *Id*. at ¶ 28

4

**STANDARD**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.").

**DISCUSSION**

**FCRA Claims**

Townsend believes that Defendants violated the FCRA by obtaining her personal credit report for the sole purpose of advertising, which would be an impermissible purpose under the Act.

Defendants clam that they were well within their rights under the Act because they were extending firm offers of credit to consumers which included all material terms.

The FCRA allows consumer reporting agencies to issue consumers' credit reports without the consumers' consent only for "permissible purposes" as specified in the statute. 15 U.S.C. § 1681b(a). One such permissible purpose is to extend a "firm offer" of credit to the consumer. 15 U.S.C. § 1681a(1). Congress believed that releasing consumer credit information to a company that intended to make a firm offer of credit "balance[d] any privacy concerns created by prescreening with the benefit of a firm offer of credit or insurance for all consumers identified through the screening process." *See* S.Rep. No. 103-209, 13 (1993); *accord Cole v. U.S. Capital*, 359 F.3d 719 (7th Cir. 2004).

A "firm offer of credit" is "any offer of credit or insurance to a consumer that will be honored if the consumer is determined, based on information in a consumer report, to meet the specific criteria used to select the consumer for the offer." *Cole*, 389 F.3d at 726 *citing* 15 U.S.C. § 681a(*l*). Such an offer may be conditioned upon: 1) additional pre-selected criteria bearing on the consumer's creditworthiness; 2) verification that the consumer meets the criteria used to select the consumer for the offer; and 3) the consumer's furnishing of any collateral established before the selection of the consumer for the offer and disclosed in the offer. *Cole*, 389 F.3d at 726 *citing* 15 U.S.C. § 1681(a)(1-3).

In order to be a firm offer, a solicitation must have "sufficient value for the consumer to justify the absence of statutory protection for his privacy." *Cole*, 389 F.3d at 726. Indeed, an offer of credit without value is at base an advertisement or solicitation, and Congress did not intend to allow access to credit reports for "catalogs and sales pitches." *Id*. at 727 *citing Trans Union Corp.*

*v. FTC*, 267 F.3d 228, 234 (D.C. Cir. 1996). "A sham offer used to pitch a product rather than extend credit does not meet the statutory definition." *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 955 (7th Cir. 2006). For example, an offer of a $1 loan at 100% daily interest toward the purchase of a car is not a firm offer. *Id*.

As such, in order to determine whether an offer comports with the definition of a firm offer of credit, "a court must consider the *entire* offer and the effect of *all* material conditions that comprise the credit product in question. If, after examining the entire context, the court determines that the "offer" was a guise for solicitation rather than a legitimate credit product, the communication cannot be considered a firm offer of credit." *Cole*, 389 F.3d at 727-28. In making such a determination, the Court considers the amount of credit to be extended as well as the terms of the offer including the rate of interest, the method of computing interest, and the length of the repayment period. *Id*. Particularly onerous terms may deprive an offer of any value. *Id*.

A firm offer need not be attractive to the majority of consumers to confer value. *Perry v. First Nat'l Bank*, 459 F.3d 816, 825 (7th Cir. 2006). That is, if an offer may have utility for some consumers, it has sufficient value for FCRA purposes. *Id*. An offer's value is an objective determination based on its value to the "normal consumer" *Id*. Courts look to three factors in determining if an offer has value to the normal consumer: 1) whether it appears likely that the offer would be honored; 2) whether the material terms of the offer are adequately disclosed; and 3) whether the amount of credit being offered is subject to limitations such that it is of little value. *Id*. at 825.

Townsend failed to present any evidence indicating that the credit offer sent to her by Defendants was not a "firm offer." First, no evidence has been provided to the Court suggesting that the offers of credit would not be honored if accepted. *See Zawacki v. Discover Fin. Serv.*, No. 06 C 4925, 2007 WL 625454, at *3 (N.D.Ill. February 23, 2007) ("critically, Plaintiff does not argue that she or any class member was denied credit upon responding to the offer"). The offers specifically stated that the recipient was pre-approved to receive $400 in credit from each of the respective companies. Def. 56.1 at ¶¶ 16, 10; *see also Zawacki*, No. 06 C 4925, 2007 WL 625454, at *3.

The terms and conditions of that offer indicated that a recipient could be extended a smaller credit line of a minimum of $50 for Swiss Colony and a minimum of $100 for Seventh Avenue; yet this does not establish that the offer was not a firm offer. The FCRA specifically states that a firm offer of credit may be conditioned on additional pre-selected criteria bearing on the consumer's creditworthiness or verification that the consumer meets the criteria used to select the consumer for the offer. *Cole*, 389 F.3d at 726 *citing* 15 U.S.C. § 1681(a)(1-3). Thus, if any of the conditions were not properly fulfilled, Defendants were free to reduce the applicant's credit limit from the original $400 offer or even to revoke the offer. Townsend does not claim that Defendants used or intended to use these clauses to randomly deny credit nor did she present evidence to support such a claim. Nor were defendants required to offer an exact amount of credit in order for the offer to be deemed a firm one because courts have found firm offers when no exact amount of credit was given. *See e.g. Forrest v. Universal Sav. Bank*, 507 F.3d 540, 543-44 (7th Cir. 2007) (firm offer despite no exact amount of credit); *King v. Commerce Bancshares, Inc.*, No. 06 C 4117, 2007 WL 781732, at *2-3 (N.D.Ill. March 12, 2007) (firm offer despite lack of specified minimum amount of credit);

*Murray v. HSBC Auto Fin., Inc.*, No. 05 C 4040, 2006 WL 2861954, at *4 (N.D.Ill. September 27, 2006) (firm offer despite no specific amount of credit).

Townsend further presents no support that the offers did not include all material terms. Indeed, it is undisputed that the offers stated all material terms: interest rate, the method for calculating interest, the payment terms, the annual fee, and the minimum finance charge. Def. 56.1 at ¶ 17. Townsend similarly makes no argument that the credit offered was without value. In truth, the credit amounts offered allowed consumers to purchase most of the items in the catalogs and provided a revolving and reusable credit line, not limited to a one-time purchase or for solely one discreet item. *Id*. at ¶¶12-13. In addition, a review of the terms shows a minimum finance charge of fifty to seventy-five cents, dependent on the consumer's state of residence, a twenty-five day grace period for payments, no annual fee, and an annual percentage rate of 6.25 to 22.5 percent, with percentages set forth by state of residence. These terms confer value on the consumer and are certainly not akin, as discussed in *Cole*, to preapproval of a tiny and useless amount of credit for the sake of pitching a product. *See Cole*, 389 F.3d at 726-27 (not a firm offer if it remained unclear if offer would be honored, several material terms were missing, small amount of credit was extended, and could be used only to purchase a car at specified dealers); *compare Perry*, 459 F.3d at 825 (firm offer when pre-approved, interest rate disclosed, and credit limit useful for purchases despite high fees and low credit limit).

Townsend argues that the offer was "target marketing" as opposed to a firm offer. "Target marketing" is not a "permissible purpose" for requesting consumer credit reports under the FCRA. *Trans Union*, 81 F.3d at 234. However, as this Court previously held in this case, Townsend's situation is distinguishable from that in *Trans Union*. *See* Docket Entry 57. Trans Union created

9

a separate division of the company devoted solely to target marketing. *Trans Union*, 81 F.3d at 230. That division used data from Trans Union's consumer reporting database to create mailing lists that were "sold to companies wishing to send sweepstakes entries, catalogs, circulars, and other solicitations to classes of customers that they believe[d] [would] be particularly responsive to their pitches." *Id*. As this Court held before, this branch of Trans Union conducted target marketing without any reference to firm offers of credit. *Id*.; *see also* Docket Entry 57. Here, Defendants included a firm offer of credit in each mailing. The mere fact that the offer of credit was connected with a catalog does not render it improper under *Trans Union*. *See* Docket Entry 57 ("But the discovery Plaintiff seeks in accordance with the *Trans Union* line of cases is not appropriate in this case; unlike Trans Union, which had formed a specific branch of its company to conduct target marketing without including offers of credit, Defendants included an offer of credit in their mailing"); *see also Murray v. New Cingular Wireless Serv., Inc.*, 432 F.Supp.2d 788, 791-91 (N.D.Ill. 2006) (offer of free wireless phone tied to activation of new line of service on a qualified Cingular calling plan constituted a firm offer).

Swiss Colony and Seventh Avenue's mailings are not merely target marketing under *Trans Union*, and Townsend puts forth no dispute of material fact as to whether Defendants extended firm offers of credit. Thus, Swiss Colony and Seventh Avenue's Motion for Summary Judgment as to Counts I-IV is granted.

**TILA Violations**

Section 1642 of TILA prohibits the issuance of a credit card absent a prior request or application from a consumer. *Munoz v. Seventh Avenue, Inc.*, No. 04 C 2219, 2004 WL 1593906, at *2 (N.D.Ill. July 15, 2004) *citing* 15 U.S.C. § 1642. The core element of a credit card is the

account number, not the piece of plastic. *Munoz*, No. 04 C 2219, 2004 WL 1593906, at *4. As such, the court in *Munoz* found that Seventh Avenue violated TILA by issuing offers of credit that contained actual active account numbers because the active account numbers qualified as a "credit devices" as defined in TILA. *Munoz*, No. 04 C 2219, 2004 WL 1593906, at *4 *citing U.S. v. Bice-Bey*, 701 F.2d 1086 1091-92 (4th Cir. 1983). "Since an account number already existed, and plaintiff did not have to complete any application, the credit card [was] considered an issued credit card." *Munoz*, No. 04 C 2219, 2004 WL 1593906, at *4 *citing Swift v. First USA Bank*, No. 98 C 8238, 1999 WL 350847, at *3, N.D.Ill. May 29, 1999).

Unlike the mailings in *Munoz*, the mailings Townsend received from Swiss Colony and Seventh Avenue included APP CODES rather than account numbers. Def. 56.1 at ¶¶ 18, 23-24. The APP CODE was not an active account number in disguise. APP CODES allowed the Defendants to trace what offer was given to a specific consumer when that consumer requested a credit account. Def. 56.1 at ¶¶ 26-27, 29-30. They could not be used to purchase merchandise from Defendants. Def. 56.1 at ¶ 30. In order to open an actual account and receive an actual account number, Townsend had to request to open one. Def. 56.1 ¶¶ 18-19, 21-22. As such, Swiss Colony and Seventh Avenue did not violate TILA because they did not issue account numbers to consumers until the consumers requested an account. *See* 15 U.S.C. § 1642. Defendants Motion for Summary Judgment is granted as to Count V.

For the reasons stated above, Swiss Colony and Seventh Avenue's Motion for Summary Judgment is granted.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: August 5, 2008